Filed 6/30/22  P. v. Weathers CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>WINONA MARIE WEATHERS,<br><br>　　Defendant and Appellant. | F082180<br><br>(Super. Ct. No. CF91438575)<br><br><br>**OPINION** |

---

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Alvin M. Harrell, III, Judge.

Sandra Gillies, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Catherine Tennant Nieto, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]　　Before Peña, Acting P. J., Smith, J. and Meehan, J.

## INTRODUCTION

In 1992, a jury convicted appellant Winona Marie Weathers of several offenses, including first degree murder (Pen. Code,[1] § 187), with a robbery-murder special circumstance (§ 190.2, subd. (a)(17)). She was sentenced to a prison term of life without the possibility of parole. Following the passage of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437), Weathers filed a section 1170.95 petition for resentencing. The Fresno County Superior Court denied Weathers's petition without appointing counsel or requesting additional briefing.

On appeal, Weathers argues the trial court erred by: (1) failing to appoint counsel to represent her on the petition, (2) relying upon the record of conviction to deny her petition, and (3) finding her ineligible for resentencing as a matter of law based upon the special circumstance finding. We affirm.

## PROCEDURAL HISTORY

On December 4, 1992, a jury convicted Weathers of the first degree murder of William McClelland (§ 187, count 1), the robbery of William McClelland (§§ 211/212.5, subd. (b), count 2), and assault with a firearm on Michael Allen (§ 245, subd. (a)(2), count 4). In addition, the jury found true enhancements alleging counts 1 and 2 occurred while Weathers was armed with a firearm (§ 12022, subd. (a)(1)), as well as a special circumstance alleging the murder occurred during the commission of a robbery (§ 190.2, subd. (a)(17)).

On July 20, 1993, Weathers was sentenced to a determinate term of four years followed by a term of life without the possibility of parole for special circumstance murder.

---

[1] All undefined statutory citations are to the Penal Code unless otherwise indicated.

On February 5, 2019, Weathers filed a section 1170.95 resentencing petition. The People opposed the petition on the ground that the robbery-murder special circumstance rendered Weathers ineligible for relief as a matter of law.

On March 22, 2019, Weathers withdrew the petition.

On November 25, 2019, Weathers filed a renewed section 1170.95 resentencing petition.

On October 20, 2020, the court denied the petition.

On December 18, 2020, Weathers filed a notice of appeal.

## STATEMENT OF FACTS

The following statement of facts is derived from the probation officer's report in Weathers's underlying criminal case:

"On December 23, 1990, at 4:52 a.m. Fresno Police Department officers were dispatched to [a condominium on] Winery Circle [in] Fresno regarding a robbery where the victim was shot in the head. Officers located the victim, William Paul McClelland, in the garage area of the residence, and noted he had a bleeding wound in the forehead area. Paramedics arrived and transported the victim to Valley Medical Center.

"Tanya Minnick testified that in December 1990 she resided [in a condominium on] Winery Circle [in] Fresno with her fiancee, William Paul McClelland (also called Paul McClelland). She said they had been living together at her condominium for about six and a half months. She reported that in August 1990 Paul McClelland was arrested and he was in jail for eight days. Tanya said she received $750 for his bail from Winona Weathers (a defendant), and that she had given defendant Weathers a gold bangle bracelet for the bail money.

"Tanya Minnick testified that on December 23, 1990, at about 2:30 a.m., she and Paul McClelland were watching a movie at her residence. She said defendant Weathers entered the condominium. Tanya indicated that Winona was her best friend, and that she had given Winona a key. She said defendant Weathers stayed at the condominium previously. Tanya said she had watched defendant Weathers'[s] children before. Tanya Minnick said a man had come in with defendant Weathers. She said he was a white man, and he was wearing a pendelton and a black baseball cap. In

3.

Court she identified John Crisp (a defendant) as the man who first entered with defendant Winona Weathers. Ms. Minnick said defendant Weathers asked Paul if he could get three ounces of crank, and she said she had $3,000 to spend. Tanya said she had known Paul to sell methamphetamine in $20 amounts before. She said Paul told defendant Weathers that he could get what she wanted.

"Tanya Minnick said Paul made a telephone call, and then he left. She said defendant Crisp then left the condominium, but he returned after a minute, and two other men were with him. She said one of these men was wearing a long green trench coat, and a beanie cap. She later described this as a ski cap. Minnick said the other man was wearing levi's, a pendelton, and a beanie cap. She said defendant Weathers told her that these men had come with her from Hanford, and that she was taking them back to Hanford.

"Tanya Minnick related that Paul returned home with his brother-in-law, Michael Allen. Paul, Michael, and defendant Weathers went out to the garage, but Weathers returned to the living room. The two men, who came into the apartment after Paul had first left, then went with defendant Weathers into the garage. Ms. Minnick made an in Court identification of Steven McGrew (a defendant) and Johnnie Bell (a defendant) as the two men who accompanied Weathers into the garage. Tanya said she then heard defendant Weathers say, 'This is because you owe me $1,500,' and 'Shoot him.' She then heard sounds like pounding, and two pops. Tanya said she ran to the garage, and she saw Paul on the floor bleeding from his head. She said Michael was in the corner, and he had a big cut on his face.

"Ms. Minnick said the man wearing the green coat was standing over Paul's body, and the other man was standing in front of Michael. She said the man in the green coat had a small brown revolver, and he pointed it in her direction. Defendant Crisp then came into the garage, and he took her by the arm back into the living room. She said he told her not to call the cops; that they would come back if she called the cops. Tanya said as the three men were leaving she heard one of them yell, 'Get the dope.'

"Tanya Minnick testified she tried to use the telephone in the living room, but the telephone line had been cut. She said the three men had left, but defendant Weathers was still there. She said Winona told her not to call the police, or they would come back and kill her. Defendant Weathers then ran to her car, a yellow Datsun Honeybee. Tanya said she then ran upstairs and called 911. She said she then went to the garage to assist Paul, and she said Mike left.

4.

"Victim William Paul McClelland was transported by ambulance to Valley Medical Center. He was found to have a gunshot wound to the head 1 1/4 inches below the top of the head, and 1 1/2 inches to the right of the midline of the forehead. The victim was pronounced brain dead at 9:30 a.m. on December 24, 1990. All mechanical life support devices were removed at 9:40 a.m. on December 24, 1990. The coroner's verdict found the cause of death to be gunshot wound to the head. A sample of the victim's blood was taken at the hospital at 5:24 a.m. on December 23, 1990. The analysis on the victim's blood sample was positive for methamphetamine: 0.23 mg/L.

"On December 24, 1990, at approximately 1:45 p.m., Michael Allen responded to Fresno Police Department headquarters. He was interviewed by Detective J. Chilberto, who noted Allen had a large swelling and a bruise under his right eye. Michael Allen reported that on Sunday morning, December 23rd, Paul McClelland had come to his home at about 2:00 or 3:00 a.m., and asked for a ride home. Allen said when they arrived at McClelland's home, McClelland asked him to come inside to cover his back. He said once inside the residence, he observed defendant Weathers and three males. Allen reported he followed McClelland into the garage, and they were followed by two of the males, and defendant Weathers.

"Michael Allen reported that once in the garage, the subject in the long green trench coat said, 'Let's see the dope.' He said McClelland answered, 'Where's the money?' The man in the trench coat then produced what appeared to be a .22 caliber handgun. Allen said he stated, 'What the fuck's going on?' He said the second man swung his right hand, in which he was holding a .25 caliber chrome handgun, and struck him just below his right eye. Michael said he then went down on one knee. At this time the subject in the trench coat began yelling at McClelland to get down on his knees.

"Michael Allen reported Paul McClelland said, 'What's going on Nona?' Defendant Weathers then responded, 'Fuck you Paul, you owe me money, shoot him, shoot him.' Allen said the subject in the trench coat then shot, hitting victim McClelland in the head. McClelland fell to the ground, and Tanya Minnick ran into the garage. The other subject grabbed the shooter, and said, 'Let's get out of here.'

"Detective Chilberto then showed Michael Allen a photo lineup. After viewing the photo lineup, Allen selected the photograph of defendant McGrew indicating this subject looked a lot like the male in the trench coat doing the shooting. Detective Chilberto showed Michael Allen a second

5.

photo lineup. After viewing this photo lineup, Allen selected the photograph of defendant Bell indicating he was positive this was the subject who struck him in the face with the .25 caliber handgun.

"Michael Allen reported that defendant McGrew started to come back towards him in the garage, but he threw some speakers in front of the door. He reported defendant McGrew then stuck his arm in the room, and fired about three times. Allen said that defendant Weathers had run out of the room, and he began yelling for Tanya to call the police. Michael Allen said Paul looked like he was dying. Allen said he went into a state of shock, and decided to leave and go look for the suspects. Allen said he was terribly afraid as these subjects were the kind that would come back to kill him."

## DISCUSSION

Weathers contends the trial court erred by denying her petition for resentencing under section 1170.95 in several respects. First, without appointing counsel and considering further briefing. Second, by making factual findings before holding an evidentiary hearing. Third, by relying upon the record of conviction to deny resentencing relief. Finally, Weathers contends the trial court erred by concluding the jury's true finding on the special circumstance renders her ineligible for relief as a matter of law. We conclude Weathers has failed to demonstrate prejudicial error.

## I.    Background:  Senate Bill No. 1437

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 "to amend the felony murder rule and the natural and probable consequences doctrine ... to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)  Senate Bill No. 1437 accomplished this task by adding three separate provisions to the Penal Code. (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).)  First, to amend the natural and probable consequences doctrine, the bill added section 188, subdivision (a)(3), which requires a principal to act with malice aforethought before he or she may be convicted of murder. (§ 188, subd. (a)(3); accord, *Gentile*, at pp. 842-843.)  Second, to

amend the felony murder rule, the bill added section 189, subdivision (e), which provides the following:

> "A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven:  [¶]  (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."  (§ 189, subd. (e); accord, *Gentile*, *supra*, 10 Cal.5th at p. 842.)

Finally, Senate Bill No. 1437 added section 1170.95 to provide a procedure for those convicted of a qualifying offense "to seek relief under the two ameliorative provisions above."  (*Gentile*, *supra,* 10 Cal.5th at p. 843.)  This procedure is available to persons convicted of "felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter."  (§ 1170.95, subd. (a).)

To seek relief under section 1170.95, a petitioner must file a petition in the superior court averring that:

> "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;]

> "(2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[; and]

> "(3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019."  (§§ 1170.95, subds. (a)(1)-(3); see also 1170.95, subd. (b)(1)(A).)

Additionally, the petition shall state "[w]hether the petitioner requests the appointment of counsel."  (§ 1170.95, subd. (b)(1)(C).)

7.

If a petition fails to comply with these requirements, "the court may deny the petition without prejudice to the filing of another petition." (§ 1170.95, subd. (b)(2).) However, if the petition complies with section 1170.95, subdivision (b)'s requirements, then the court must assess whether the petitioner has made "a prima facie showing" for relief. (§ 1170.95, subd. (c).)

## II.     The Trial Court Erred by Failing to Appoint Counsel

In *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*), our Supreme Court held that "the statutory language and legislative intent of section 1170.95 make clear that petitioners are entitled to the appointment of counsel upon the filing of a facially sufficient petition (see § 1170.95, subds. (b), (c)) and that only *after* the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.' " (*Id.* at p. 957.)

Here, Weathers's petition met the requirements of section 1170.95, subdivision (b)(1). Accordingly, appointment of counsel and a full opportunity for briefing were required by section 1170.95, subdivisions (b)(3) and (c). (See *Lewis*, *supra*, 11 Cal.5th at pp. 961-963, 967.) The court erred in denying Weathers's petition without following these procedures.

## III.     Factfinding at the Prima Facie Stage

Next, Weathers contends the trial court engaged in improper factfinding at the prima facie review. The trial court may not engage in factfinding involving the weighing of the evidence at the prima facie stage. (*Lewis, supra*, 11 Cal.5th at p. 972.) It may, however, consider the record of conviction in "determining whether [a] petitioner is entitled to relief." (*People v. Simmons* (2021) 65 Cal.App.5th 739, 746, review granted Sept. 1, 2021, S270048 (*Simmons*).) If the record of conviction contains facts refuting the allegations asserted in the petition, the trial court will be justified in denying the

petition at the prima facie review stage. (*People v. Farfan* (2021) 71 Cal.App.5th 942, 953.)

Here, the trial court concluded Weathers was ineligible for resentencing, explaining: "[t]he condition set out at [section] 1170.95[, subdivision ](a)(3) does not apply" because "[Weathers] did, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree. [Weathers] was a major participant in the felony." Because the court did not clarify how it made this determination, it is unclear whether the trial court reached these conclusions based purely upon the jury's true finding on the special circumstance, or whether it engaged in factfinding. We further observe that while the court found Weathers was a major participant in the underlying robbery, it failed to explicitly find that she acted with reckless indifference to human life. However, as discussed further below, any presumed error by the court is harmless.

## IV.    Prejudice

Because the trial court erred in failing to appoint counsel, and may have erred by engaging in factfinding, we may affirm only if petitioner was not prejudiced by the error. (*Lewis, supra*, 11 Cal.5th at pp. 972-974.) Under *People v. Watson* (1956) 46 Cal.2d 818, the petitioner must " 'demonstrate there is a reasonable probability that in the absence of the error he ... would have obtained a more favorable result.' " (*Lewis,* at p. 974.) "More specifically, a petitioner 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing." ' " (*Ibid*., citing *People v. Daniel* (2020) 57 Cal.App.5th 666, 676.) We conclude Weathers has failed to meet her burden of showing prejudice.

Relief under section 1170.95 is available only if the petitioner makes a prima facie showing that he or she "could not be convicted of first or second degree murder because of changes to Section 188 or 189" made by Senate Bill No. 1437. (§ 1170.95, subd. (a)(3); *People v. Farfan*, *supra*, 71 Cal.App.5th at p. 954.) In finding the special circumstance (§ 190.2, subd. (a)(17)) true, the jury necessarily found that Weathers was either (1) the actual killer; (2) an aider and abettor who harbored an intent to kill or (3) a major participant who acted with reckless indifference to human life, findings that would make her guilty of murder under the amended law.[2] (See §§ 189, subd. (e)(3), 1170.95, subd. (a).) Any of these findings preclude Weathers from section 1170.95 resentencing relief as a matter of law. (*People v. Farfan,* at p. 954.)

We acknowledge that there is split of authority among appellate courts regarding whether a special circumstance finding precludes section 1170.95 resentencing relief as a matter of law. Some courts have concluded that a petitioner with a special circumstance finding that occurred prior to our Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) may have been convicted based on "conduct that is not prohibited by section 190.2 as currently understood." (*People v. Torres* (2020) 46 Cal.App.5th 1168, 1180, review granted June 24, 2020, S262011, overruled on other grounds by *Lewis*, *supra*, 11 Cal.5th at p. 963; accord, *People v. Harris* (2021) 60 Cal.App.5th 939, 958, review granted April 28, 2021, S267802; *People v. York* (2020) 54 Cal.App.5th 250, 258, review granted Nov. 18, 2020, S264954; *People v. Smith* (2020) 49 Cal.App.5th 85, 93, review granted July 22, 2020, S262835.) And, if the jury's finding on a felony-murder special circumstance is legally insufficient under *Banks* and *Clark*, such a finding cannot "conclusively refute a prima

---

**2** Weathers filed a request for judicial notice of CALJIC No. 8.80.1, the jury instruction given at her criminal trial pertaining to the special circumstance. We take judicial notice of this document. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

facie showing of entitlement to resentencing relief." (*People v. Secrease* (2021) 63 Cal.App.5th 231, 256, review granted Jun. 30, 2021, S268862.) Thus, in considering whether a petitioner is entitled to relief pursuant to section 1170.95, the sentencing court must first determine whether "the evidence presented at trial was sufficient to support the felony-murder special-circumstance finding under *Banks and Clark.*" (*Secrease*, at p. 264.)

A contrary line of authority has emerged rejecting this contention and concluding that a special circumstance finding bars section 1170.95 resentencing relief as a matter of law. (See *People v. Nunez* (2020) 57 Cal.App.5th 78, 92, review granted Jan. 13, 2021, S265918; *People v. Jones* (2020) 56 Cal.App.5th 474, 478-479, review granted Jan. 27, 2021, S265854; *People v. Allison* (2020) 55 Cal.App.5th 449, 458; *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1142, review granted Oct. 14, 2020, S264284; *People v. Gomez* (2020) 52 Cal.App.5th 1, 13-14, review granted Oct. 14, 2020, S264033.) "Courts which have held that a pre-*Banks* and *Clark* felony-murder special-circumstance finding bars section 1170.95 resentencing relief have reasoned that *Banks* and *Clark* merely clarified the law as it always was." (*Simmons, supra,* 65 Cal.App.5th at p. 747.) *Banks* and *Clark* merely relied upon decisions by the United States Supreme Court to clarify principles that have long been in existence. (*Simmons*, at p. 749, citing *Enmund v. Florida* (1982) 458 U.S. 782 & *Tison v. Arizona* (1987) 481 U.S. 137.)

Consistent with this court's opinion in *Simmons*, we conclude that a special circumstance finding precludes resentencing relief under section 1170.95 as a matter of law. By finding the special circumstance allegation true, the jury made the requisite findings necessary to support Weathers's murder conviction under the law as amended by Senate Bill No. 1437.

Weathers contends there are several problems with *Simmons* and requests that we depart from our prior holding. We decline to do so.

The issue is currently pending review in our Supreme Court as well, so we will soon have clarity one way or the other. (*People v. Strong* (Dec. 18, 2020, C091162) [nonpub. opn.], review granted Mar. 10, 2021, S266606 ["This case presents the following issue: Does a felony-murder special circumstance finding (Pen. Code, § 190.2, subd. (a)(17)) made before *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522 preclude a defendant from making a prima facie showing of eligibility for relief under Penal Code section 1170.95?"].) In the interim, given the vigorous debate and detailed analysis that has already been dedicated to this issue, we do not address Weathers's contentions. Pursuant to our holding in *Simmons*, we conclude the special circumstance finding here precludes Weathers from section 1170.95 resentencing relief as a matter of law.

## **DISPOSITION**

The trial court's order denying Weathers's section 1170.95 petition is affirmed.